# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# AT COVINGTON

| | | |
|---|---|---|
| SAM GRIPPA<br>3832 Elljay Drive<br>Cincinnati, Ohio 45241 | : <br> : <br> : | CASE NO. _____<br><br>(Judge _____) |
| Plaintiff, | : | |
| v. | : | |
| ST. ELIZABETH<br>MEDICAL CENTER, INC.<br>d/b/a<br>ST. ELIZABETH IMAGING CENTER<br>and KENTUCKY DIAGNOSTIC CENTER<br>1 Medical Village Drive<br>Edgewood, KY 41017 | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| and | : | |
| TRANSCARE OF KENTUCKY, INC.<br>2169 Chamber Center Boulevard<br>Covington, KY 41017 | : <br> : <br> : | **COMPLAINT WITH JURY**<br>**DEMAND ENDORSED HEREON** |
| Defendants. | : | |

## PARTIES

1. Plaintiff Sam Grippa is a resident and citizen of the State of Ohio.

2. Defendants St. Elizabeth Medical Center, Inc. ("St. Elizabeth") and TransCare, Inc. ("TransCare") are Kentucky corporations residing in and doing business in the Commonwealth of Kentucky. Defendants are employers within the meaning of applicable federal and Kentucky law.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Defendants because Defendants transacts business in this division and district.

4.     This Court has original jurisdiction to hear this case pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

5.     This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. Plaintiff's Counts I, II and V arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112, *et. seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2615, *et. seq.*

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 and 28 U.S.C. § 1331 because they are so related to the federal claims over which this Court has original jurisdiction, that they form part of the same case or controversy.

7.     Venue is proper in this Division and District pursuant to 28 U.S.C. § 1391 because Defendants employed Plaintiff in this Division and District, and a substantial part of the events giving rise to Plaintiff's claims occurred within this Division or District.

8.     Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

9.     Plaintiff was the first person hired by Kentucky Diagnostic Center ("KDC") and worked there for some 21 years.

10.    Plaintiff's most recent position was as President/CEO of KDC and began to manage Defendant TransCare in 2001.

11.    Plaintiff and KDC entered into a written employment contract that provided for 180 days notice for termination without cause. The contract defined cause explicitly and provided for cure of any breach.

12.    Plaintiff developed the disabilities of depression and substance addiction in 2006 after several very distressing life experiences, including the loss of his mother and a divorce.

13. Although Plaintiff never worked under the influence, he checked himself into a nine-week substance abuse rehabilitation program in October 2007.

14. When Plaintiff entered rehabilitation, he named Joseph Carolin, KDC's CFO, as his contact person, and the program informed Carolin of Plaintiff's start and completion of rehabilitation.

15. Plaintiff availed himself of his FMLA rights by taking leave for his disabilities because he was unable to perform the functions of his position.

16. Plaintiff properly notified Defendants of his need for medical leave and of his reasons for needing leave.

17. Plaintiff experienced a brief relapse of his addiction disability in early 2008 after the death of a close friend.

18. Plaintiff informed Carolin and TransCare executive Judy Arnett in March of his relapse and intention to seek treatment, and Carolin and Arnett told Plaintiff that they had spoken with Marc Hoffman of St. Elizabeth about getting him treatment for his disability.

19. Instead, Hoffman told Plaintiff that he would have to undergo a fitness for duty test at St. Elizabeth involving drug tests and a psychological evaluation, even though he had already informed Defendants of his disability and desire for treatment.

20. Plaintiff informed the Board of Directors that although he would likely test positive for marijuana, he did not think he would test positive for cocaine.

21. At no point was Plaintiff told that his continued employment was dependant on the results of the examination or tests.

22. Plaintiff tested positive for marijuana and cocaine metabolite and was diagnosed as clinically depressed as a result of the fitness for duty exam, but he did not test positive for cocaine.

23. Cocaine metabolite remains in a user's system for up to 30 days, whereas cocaine leaves the system after one to three days.

24. Defendants' physician determined that Plaintiff was temporarily unable to perform the functions of his position due to his disability of depression and that further input from Plaintiff's physician was needed.

25. Defendants' physician properly notified Defendants of Plaintiff's need for medical leave and of his reasons for needing leave.

26. Plaintiff signed a release for the fitness for duty test allowing Defendant St. Elizabeth to release the results of his examination to KDC, but did not authorize release to Defendant TransCare.

27. Defendant St. Elizabeth released Plaintiff's sensitive medical information to Defendant TransCare without Plaintiff's authorization, causing Plaintiff emotional distress, humiliation, and anguish.

28. On information and belief, Defendants have shared Plaintiff's sensitive medical information with third parties, causing Plaintiff further upset, humiliation, and loss of reputation and professional opportunities.

29. Defendants informed Plaintiff verbally on March 28, 2008 that he was terminated effective immediately because of the results of his fitness for duty test, and because the company did not want to set a precedent.

30. Disability is not a defined cause for termination under Plaintiff's employment contract, nor did Defendants provide Plaintiff with notice of or the contractual opportunity to cure any alleged breach of the agreement by Plaintiff.

31. Plaintiff informed Defendants that they had breached the employment contract, and they failed to cure their breaches.

## COUNT I

### (Disability Discrimination and Retaliation - ADA)

32.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

33.     Plaintiff is a qualified individual with a disability, is perceived as disabled, and/or has a record of a disability as defined by the ADA.

34.     Plaintiff could perform the essential functions of his position with or without reasonable accommodation.

35.     Defendants intentionally, willfully, and wantonly discriminated against Plaintiff because of his disability, both perceived and real, in violation of the ADA.

36.     Plaintiff lawfully requested a reasonable accommodation for his disability from the Defendant.

37.     As a result of Plaintiff's conduct in lawfully requesting a reasonable accommodation, Defendant retaliated against Plaintiff, in violation of the ADA.

38.     Defendants' acts in discriminating and retaliating against Plaintiff on account of his request for accommodation, disability, perceived disability and/or record of a disability include, but are not limited to, refusing to accommodate his disability, treating him differently than similarly situated non-disabled employees, and terminating his employment on account of his disability, perceived disability and/or record of a disability.

39.     Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

40.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to the ADA.

## COUNT II

### (Failure to Accommodate - ADA)

41. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

42. Plaintiff requested a reasonable accommodation for his disability.

43. Defendant refused Plaintiff's request for accommodation.

44. Plaintiff's proposed accommodation did not interfere with his essential job functions or impose an undue hardship on Defendant.

45. Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

46. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to the ADA.

## COUNT III

### (Disability Discrimination and Retaliation - KRS Chapter 344)

47. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

48. Plaintiff is a qualified individual with a disability, is perceived as disabled, and/or has a record of a disability as defined by the Ohio Revised Code, Chapter 4112.

49. Plaintiff could perform the essential functions of his position with or without reasonable accommodation.

50. Defendant intentionally, willfully, and wantonly discriminated against Plaintiff because of his disability, both perceived and real, in violation of Ohio Revised Code, Chapter 4112.

51. Defendants' acts in discriminating against Plaintiff on account of his disability, perceived disability and/or record of a disability include, but are not limited to, refusing to accommodate his disability, treating him differently than similarly situated non-disabled

employees, and terminating his employment on account of his disability, perceived disability and/or record of a disability.

52. Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

53. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to KRS Chapter 344.

## COUNT IV

### (Failure to Accommodate - KRS Chapter 344)

54. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

55. Plaintiff requested a reasonable accommodation for his disability.

56. Defendants refused Plaintiff's request for accommodation.

57. Plaintiff's proposed accommodation did not interfere with his essential job functions or impose an undue hardship on Defendant.

58. Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

59. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to the KRS Chapter 344.

## COUNT V

### (FMLA Interference/Retaliation)

60. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

61. Plaintiff had a serious health condition that made him unable to perform the functions of his position.

62. Plaintiff availed himself of his right to FMLA leave because of his serious health condition by properly notifying Defendants of his need for medical leave and by taking medical leave.

63. Defendants terminated Plaintiff because he exercised his right to FMLA leave.

64. Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

65. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been injured and is entitled to judgment and compensation pursuant to the FMLA.

## COUNT VI

### (Breach of Contract)

66. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

67. Plaintiff fulfilled his obligations under his contractual agreement with Defendants.

68. Defendants breached this agreement by terminating him in contradiction of the terms of the agreement and by failing to notify him of or allow him to cure any alleged breach of the agreement by Plaintiff.

69. Defendants' breaches constitute material breaches of the contracts between Plaintiff and Defendants.

70. Plaintiff provided Defendants with an opportunity to cure their breaches of the agreement and they failed to so cure those breaches.

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered substantial damages and is entitled to judgment.

## CLAIM VII

### (Tortious Invasion of Privacy)

72. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

73. Defendant St. Elizabeth publicized Plaintiff's private medical information by releasing it to Defendant TransCare.

74. Publicizing Plaintiff's medical information was an unwarranted, wrongful intrusion into Plaintiff's privacy such as to outrage or cause mental suffering, shame or humiliation to a reasonable person and did so cause Plaintiff mental suffering, shame and humiliation.

75. Defendants' actions were intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

76. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been damaged and is entitled to judgment against Defendants.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a) That Defendants be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be reinstated to his employment effective March 28, 2008;

(c) That Plaintiff be awarded all lost pay and benefits;

(d) That Plaintiff be awarded compensatory damages;

(e) That Plaintiff be awarded liquidated damages;

(f) That Plaintiff be awarded punitive damages;

(g) That Plaintiff be awarded special damages caused by the release of his private information to unauthorized person, including, but not limited to, damage to his professional reputation and ability to obtain employment;

(h) That Plaintiff be awarded reasonable attorneys' fees and costs;

(i) That Plaintiff be awarded prejudgment interest; and

(j) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

/s/ Randolph H. Freking
Randolph H. Freking (0009158)
Trial Attorney for Plaintiff
FREKING & BETZ, LLC
525 Vine Street, 6th Floor
Cincinnati, OH 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*randy@frekingandbetz.com*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

/s/ Randolph H. Freking